**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KERRY MARSHALL, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:10-cv-908 (JCH) |
| | : | |
| v. | : | |
| | : | |
| WEBSTER BANK, N.A., and | : | JANUARY 20, 2011 |
| LINDA N. MAYO, | : | |
|     Defendants. | : | |

**RULING RE:  DEFENDANTS' MOTION TO DISMISS (DOC. NO. 21) &
PLAINTIFF'S MOTION TO STRIKE (DOC. NO. 35)**

## I.   INTRODUCTION

Proceeding pro se, Kerry Marshall asserts federal and state law claims against

Webster Bank, N.A. ("Webster") and Linda Mayo, an attorney for Webster.  Marshall

alleges that Webster deducted money from his bank account, closed that account, and

reported to a third party that he was suspected of fraud activity.  Marshall alleges that

Mayo colluded with Webster and took inappropriate actions to deny him any recourse.

Defendants filed a Motion to Dismiss (Doc. No. 21) pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6).  After the Motion was briefed, Marshall filed a Motion to Strike (Doc. No.

35) defendants' Reply Memorandum.  For the following reasons, defendants' Motion to

Dismiss is granted in part and denied in part.  Marshall's Motion to Strike is denied.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's

subject matter jurisdiction.  "Determining the existence of subject matter jurisdiction is a

threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Australia Bank, 547 F.3d 167, 170 (2d Cir. 2008) (quotation omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id. (citation and quotations omitted). The court "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); see also Morrison, 547 F.3d at 170.

The court's inquiry is limited to those legal requirements that pertain to the court's authority to adjudicate the case, as opposed to those that identify threshold requirements, or other substantive elements, of a claim for relief. A failure to plead or establish an element of the latter kind does not warrant dismissal for lack of subject matter jurisdiction. See Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1243-44 (2010) (criticizing "'drive by jurisdictional rulings,' which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action" (citations omitted)); Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16 (2006) (holding that failure to establish that defendant had 15 employees, as required for a claim under Title VII, did not warrant dismissal for lack of subject matter jurisdiction). To identify statutory jurisdictional requirements, the court applies a "readily

2

administrable bright line" test:

> If the Legislature clearly states that a threshold limitation on
> a statute's scope shall count as jurisdictional, then courts
> and litigants will not be left to wrestle with the issue.  But
> when Congress does not rank a statutory limitation on
> coverage as jurisdictional, courts should treat the restriction
> as nonjurisdictional in character.

Arbaugh, 546 U.S. at 515-16 (footnote and citation omitted); accord Reed Elsevier, 130
S. Ct. at 1244.

### B.    Motion to Dismiss for Failure to State a Claim

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine
whether the plaintiff has stated a legally-cognizable claim by making allegations that, if
true, would show he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require
allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court
takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New
York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable
inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." <u>Iqbal</u>, 129 S. Ct. at 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 119 (2d Cir. 2010); <u>see also</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the <u>Iqbal</u> court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim <u>plausible</u>." <u>Boykin</u>, 521 F.3d at 213 (citation omitted); <u>accord</u> <u>Arista Records</u>, 604 F.3d at 120.

### C. Application of Standards to Pro Se Submissions

Regardless of the basis for a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they <u>suggest</u>." <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir.

2006) (emphasis in original, quotation omitted). This principle has not been undercut by the announcement of the plausibility standard in Twombly. After deciding Twombly, the Supreme Court reaffirmed that a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94. The Erickson Court held that the lower court's "departure from the liberal pleading standards set forth by Rule 8(a)(2)" was "more pronounced" because the plaintiff had been proceeding without counsel. Id. Thus, "even after Twombly, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." Boykin, 521 F.3d at 216.

Where a pro se complaint must be dismissed due to a pleading deficiency, the court should generally provide leave to amend. Watts v. Services for the Underserved, 309 F. App'x 533, 535 (2d Cir. 2009) ("[W]here the ground for dismissal is quite narrow and the plaintiff appears pro se, it was error to enter judgment . . . rather than permitting plaintiff at least one chance to cure a pleading defect."); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.").

## III.  FACTS

The Complaint alleges that Marshall opened a checking account with Webster Bank on December 4, 2007. At that time, Webster Bank representatives checked

Marshall's record with "ChexSystems" and permitted him to open an account.[1] Complaint ¶ 8. On or about February 13, 2008, a Webster Bank representative fraudulently and "unlawfully access[ed] and remov[ed] monies" from Marshall's checking account, using a "manufactured setoff" of an "alleged $233 debt" as a pretext for doing so. Id. ¶¶ 9, 14. Marshall's account was then closed by Webster Bank. Id. ¶ 9.

On or about July 21, 2009, Marshall became aware that Webster had reported to ChexSystems that Marshall was "suspected of fraud activity." Id. ¶¶ 10, 16. Marshall alleges that this report was inaccurate and libelous, that Webster Bank failed to investigate the matter prior to reporting it, and that Webster Bank failed to notify him of the negative report within 30 days. Id. Marshall also alleges that Webster Bank failed to provide any procedure for resolving these issues, but instead colluded with Attorney Mayo to deny him recourse. Id. ¶¶ 11, 12. The Complaint alleges that Mayo engaged in "bad faith and harassing litigation conduct" and "asserted a defense without probable cause." Id. ¶ 12. The only indication of where this conduct occurred comes in a footnote, where the Complaint refers to an "underlying" state court action in which Mayo allegedly "court[ed] favor with the trier of fact and/or court clerks."[2] Id. ¶ 12.

Marshall alleges that Webster took some or all of these actions in retaliation for statements Marshall made to the Comptroller of Currency concerning Webster Bank's

---

[1] "ChexSystems" is not explained in the Complaint or in the memoranda. According to a website purportedly maintained by Chex Systems, Inc., ChexSystems is "a network . . . comprised of member Financial Institutions that regularly contribute information on mishandled checking and savings accounts to a central location," and which "shares this information among member institutions to help them assess the risk of opening new accounts." See ChexSystems Consumer Assistance Website, https://www.consumerdebit.com/consumerinfo/us/en/index.htm.

[2] The nature and status of this "underlying" action is not explained in the Complaint. Defendants do not argue that it bears on the proper resolution of their Motion.

"ethics and activities." Id.  The Complaint provides no further details about Marshall's statements to the Comptroller.  In addition to this retaliatory motive, Marshall alleges that he is an African American, id. ¶ 1, and that Webster "discriminated against [him] based upon race." Id. ¶ 11.

Marshall charges that Webster Bank committed fraud; unlawful retaliation for constitutionally protected speech; libel; violations of the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq.; and violations of Title VI, 42 U.S.C. section 2000d, et seq. Complaint ¶¶ 14-18.  Marshall also claims that Webster and Mayo engaged in a conspiracy to violate his constitutional rights and interfere with his "banking privileges and right to reasonable redress." Id. ¶ 19.  Marshall claims that the defendants' conduct caused him various injuries, including loss of business opportunity, loss of reputation, loss of banking opportunity, loss of income, lower credit rating, pain, suffering and emotional distress. Id. ¶¶ 14-19.  Marshall seeks $1.25 million in compensatory damages and $2.5 million in punitive damages, as well as injunctive relief.

## IV.  DISCUSSION

### A.  Absence of Diversity Jurisdiction

The Complaint cites numerous legal provisions in support of subject matter jurisdiction, including the diversity jurisdiction statute, 28 U.S.C. section 1332(a); provisions of a jurisdictional statute pertaining to certain civil rights claims, 28 U.S.C. section 1343; and the supplemental jurisdiction statute, 28 U.S.C. section 1367.  As defendants argue, it is apparent from the face of the Complaint that the requirements of diversity jurisdiction are not met.  Conceding this fact, Marshall explains that the Complaint's reference to 28 U.S.C. section 1332 was inadvertent and that he intended

to allege federal question jurisdiction, pursuant to 28 U.S.C. section 1331.  <u>See</u>

Memorandum in Opposition ("Opp.") at 5.  Section 1331 gives the court "original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States."  28 U.S.C. § 1331.  Therefore, the court will address each of the causes

of action alleged, determining whether they are covered by this statute or by any other

jurisdictional statute and, if so, whether they adequately state a claim for which relief

can be granted.

### B.    Count II – Free Speech Retaliation

Count II is styled as a claim for "Retaliation of protected speech under the First

Amendment."  Marshall alleges that he made complaints to the Comptroller of Currency

"about Webster's misplaced ethics and fraudulent activity" and that, in retaliation,

Webster removed money from Marshall's bank account, closed that account, and made

an inaccurate report that Marshall was suspected of fraudulent activity to the

ChexSystem consumer rating system.

Defendants do not contest that the court has subject matter jurisdiction over

claims for First Amendment retaliation generally.  Instead, relying on case law involving

retaliation claims brought by public employees, defendants argue only that the

pleadings are inadequate to show that Marshall's speech addressed a matter of "public

concern."  Defendant's Memorandum ("Mem.") at 9 (citing <u>Blackman v. New York City

Transit Authority</u>, 491 F.3d 95, 96 (2d Cir. 2007); <u>Lindsey v. City of Orrick, Missouri</u>, 491

F.3d 892 (8th Cir. 2007)).  However, this alleged deficiency would relate to the

substantive sufficiency of the pleadings.  <u>See</u> <u>Ruotolo v. City of New York</u>, 514 F.3d

184, 188 (2d Cir. 2008) (listing speech addressing "a matter of public concern" as a

substantive element of a First Amendment retaliation claim by a public employee and affirming dismissal pursuant to Rule 12(b)(6) based on this element); <u>see also</u> Defendant's Mem. at 9 ("The complaint is devoid of any factual allegations regarding this alleged area of public concern . . . . Consequently, Plaintiff <u>has no claim</u> for First Amendment Retaliation, depriving this court of subject matter jurisdiction.") (emphasis added). Failure to adequately plead a claim for First Amendment retaliation does not remove that claim from the court's federal question jurisdiction. Therefore, the Motion to Dismiss Count II under Rule 12(b)(1) is denied.

Defendants rely on the same public employee case law to support dismissal pursuant to Rule 12(b)(6). That reliance is misplaced. There are no allegations that Marshall is a public employee, that defendants are public employers, or that Marshall has been subject to adverse employment action. The requirement that the speech at issue must address a "matter of public concern" is peculiar to public employee retaliation suits, where the law must balance the public employee's right to speak in some contexts against the public employer's need to control their employees' words and actions in others. <u>See</u> <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418-19 (2006). First Amendment retaliation claims arise in other contexts, and in those contexts, the Second Circuit has required that the speech at issue be protected, but not specifically that it address a matter of public concern. <u>See, e.g.</u>, <u>Espinal v. Goord</u>, 558 F.3d 119, 128 & n.7 (2d Cir. 2009); <u>see also</u> <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380-82 (2d Cir. 2004) (discussing differences in the statements of the standard for retaliation claims in various contexts); <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72-73 (2d Cir. 2001).

Marshall's claim fails for a more obvious reason. The First Amendment protects

the freedom of speech only from government interference. "That 'Congress shall make no law . . . abridging the freedom of speech, or of the press' is a restraint on government action, not that of private persons." <u>Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee</u>, 412 U.S. 94, 114 (1973) (citing <u>Public Utilities Comm'n v. Pollak</u>, 343 U.S. 451, 461 (1952)). There are no allegations that Webster or Mayo are government actors, nor that they conspired or acted with government actors. Accordingly, Count II fails to state a claim for First Amendment retaliation. Count II is dismissed, with leave to replead, if Marshall has a factual basis to set forth allegations supporting a claim for First Amendment retaliation involving government action.

### C. Count IV – Fair Credit Reporting Act

In Count IV, Marshall alleges that Webster "violated [his] rights under the Fair Credit Reporting Act" and is liable pursuant to 15 U.S.C. sections 1681n and 1681o. Sections 1681n and 1681o provide a private cause of action for violations of the Fair Credit Reporting Act ("FCRA"). Moreover, 15 U.S.C. section 1681p provides that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court . . . ." Accordingly, the court has jurisdiction to adjudicate this Count.

Turning to the substance of the claim, FCRA imposes a number of requirements on persons providing information to credit reporting agencies. <u>See</u> 15 U.S.C. § 1681s-2. In particular, FCRA prohibits a person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." <u>Id.</u> § 1681s-2(a)(1)(A). FCRA defines "reasonable cause to believe" in this context to mean "having specific

knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." Id. § 1681s-2(a)(1)(D). FCRA also requires financial institutions that "regularly and in the ordinary course of business furnish[ ] information to a credit reporting agency" to provide written notice to a customer within 30 days of furnishing negative information to a credit reporting agency about that customer. Id. § 1681s-2()(7)(A), (B).

The Complaint's allegations relate directly to these provisions. Marshall alleges that Webster "willfully, unreasonably and with malice" reported inaccurate, negative information about him to a credit reporting agency. Complaint ¶¶ 10, 17. Marshall also alleges that Webster failed to investigate that claim before reporting it. Id. Furthermore, Marshall alleges that Webster failed to notify him within thirty days that it had reported this negative information. Id.

Defendants focus narrowly on Marshall's allegation that Webster failed to investigate and argue that, at the time, there was "no requirement on a furnisher to conduct an investigation unless requested to do so by the consumer reporting agency." Defendants' Mem. at 13. Marshall's allegation of willful, unreasonable, and malicious reporting of inaccurate information may be read as independent of his allegation of failure to investigate. The Complaint is fairly read to accuse Webster of reporting information that it already knew or had reasonable cause to believe was inaccurate. Defendants do not dispute that that is prohibited by FCRA. Moreover, defendants do not address Webster's alleged failure to provide written notice to Marshall, as required by FCRA.

Accordingly, the court finds that these allegations state a sufficiently plausible

claim and provide defendants with fair notice of the basis of that claim. Defendants'

Motion to Dismiss is denied with respect to Count IV.

### D. Count V – Violation of Title VI of the Civil Rights Act

In Count V, the Complaint seeks relief for violation of Title VI of the Civil Rights

Act of 1964. Complaint ¶ 18. The parties dispute whether Title VI's substantive

prohibition, 42 U.S.C. section 2000d, extends to the defendants. That dispute pertains

to whether or not Marshall has adequately stated a claim, not to whether or not the court

has jurisdiction to resolve such a claim. For purposes of subject matter jurisdiction, the

question is whether or not the statute provides a private right of action in federal court.

That question is settled: it does. Alexander v. Sandoval, 532 U.S. 275, 279 (2001)

("[P]rivate individuals may sue to enforce § 601 of Title VI [i.e., 42 U.S.C. § 2000d] and

obtain both injunctive relief and damages."). Such a claim is plainly within the court's

federal question jurisdiction pursuant to 28 U.S.C. section 1331.[3] The Motion to

Dismiss Count V under Rule 12(b)(1) is, therefore, denied.

The primary provision of Title VI is a prohibition against certain forms of

discrimination in programs or activities receiving federal financial assistance. Section

2000d provides, in full:

> No person in the United States shall, on the ground of race,
> color, or national origin, be excluded from participation in, be
> denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial
> assistance.

---

[3] Although it is not cited by the parties, 28 U.S.C. section 1343(a)(4) also provides "jurisdiction of
any civil action . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress
providing for the protection of civil rights . . .".

42 U.S.C. § 2000d.[4]  The Second Circuit has explained that Title VI "was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary."  Soberal-Perez v. Heckler, 717 F.2d 36, 38 (2d Cir. 1983), cert. denied 466 U.S. 929 (1984); see also U.S. Dep't of Treasury v. Paralyzed Veterans of America, 477 U.S. 597, 605-06 (1986) ("Under . . . Title VI . . . , Congress enters into an arrangement in the nature of a contract with the recipients of the funds:  the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision.").

Marshall argues that Title VI prohibits discrimination by Webster Bank because Webster Bank receives federal financial assistance in the form of deposit insurance from the FDIC.  Opp. at 4.  The court can find no support for that theory.  Significantly, Title VI is expressly limited:

> Nothing in this subchapter shall add to or detract from any existing authority with respect to any program or activity under which Federal financial assistance is extended by way of a contract of insurance or guaranty.

42 U.S.C. § 2000d-4.  This same limitation is also reflected in the provision authorizing federal rulemaking to effectuate Title VI.  42 U.S.C. § 2000d-1 ("Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of

---

[4] Defendants' Memorandum quotes additional language which they attribute it to "42 U.S.C. § 2000d, Section 1."  Def. Mem. at 3, 14.  They read that language to show that Title VI is limited to federally assisted education programs.  However, there is no "Section 1" of 42 U.S.C. section 2000d.  The language that they quote appears in Section 1 of Executive Order No. 13160, which is reprinted among the annotations to the statute.  That Executive Order cites Title VI as one of a number of "[e]xisting laws and regulations [that] prohibit certain forms of discrimination in Federally conducted education and training programs and activities."  It does not suggest that Title VI's application is limited to education and training programs.  See Exec. Order No. 13160, 65 F.R. 39775 (June 23, 2000).

insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d . . .") (emphasis added).  Assuming that FDIC deposit insurance is federal financial assistance, it is federal assistance in the form of a guaranty or contract for insurance.[5]  Accordingly, the Complaint fails to state a claim as a matter of law under Title VI.  Count V is dismissed without leave to replead.

### E.    Count VI - Conspiracy

Count VI of the Complaint alleges a conspiracy between Webster and Mayo to interfere with and deny Marshall's rights under the First Amendment and his "right to reasonable redress."  Complaint ¶ 19.  As a basis for this claim, Marshall cites a criminal conspiracy statute, 18 U.S.C. section 241.  Id.  However, this criminal statute does not provide a private right of action.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994); Burke v. APT Foundation, 509 F. Supp. 2d 169, 173 (D. Conn. 2007); Powers v. Karen, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), aff'd 963 F.2d 1522 (2d Cir. 1992).  Therefore, if construed as a claim under this criminal statute, Count VI is not within the court's jurisdiction.

The court is obliged, however, to construe the Complaint to raise the strongest claims that it suggests.  For two reasons, the court finds that the Complaint suggests a claim under 42 U.S.C. section 1985(2), a civil conspiracy statute.  First, the Complaint alleges jurisdiction pursuant to 28 U.S.C. section 1343(a)(1), (2), and (3).  Complaint ¶ 4.  Section 1343(a)(1) and (2) provides jurisdiction solely for civil suits to redress

---

[5] Congress established the FDIC to provide "the benefits of insurance" for deposits in banks and savings associations.  12 U.S.C. § 1811(a).  In exchange, insured institutions are required to pay fees to maintain the FDIC insurance fund, and they may also be required to provide surety bonds and assets to the FDIC. 12 U.S.C. § 1815.

violations of 42 U.S.C. section 1985.[6]  Thus, reference to section 1343(a)(1) and (2)

suggests an intent to sue under section 1985.

Second, the Complaint alleges a conspiracy with a number of the specific

features addressed by section 1985(2).  The second part of section 1985(2) provides a

private cause of action against certain conspiracies to interfere with the administration

of justice in state courts.  In pertinent part, section 1985(2) provides a right to sue:

> if two or more persons conspire for the purpose of impeding,
> hindering, obstructing, or defeating, in any manner, the due
> course of justice in any State or Territory, with intent to deny
> to any citizen the equal protection of the laws, or to injure
> him or his property for lawfully enforcing, or attempting to
> enforce, the right of any person, or class of persons, to the
> equal protection of the laws . . . .

Consistent with the textual references to equal protection and class membership, this

portion of section 1985(2) is limited to conspiracies motivated by racial or "class-based,

invidiously discriminatory animus."  See Griffin v. Breckenridge, 403 U.S. 88, 101-02

(1971); Keating v. Carey, 706 F.2d 377, 385 (2d Cir. 1983).[7]

---

[6] Section 1343(a)(3) provides jurisdiction over civil suits to redress deprivations of federal civil rights committed "under color of any State law, statute, ordinance, regulation, custom or usage."  "That phrase imposes a literal 'state action' requirement."  Gasden v. U.S.P.S., 95-cv-734 (MBM), 1995 WL 758775, *6 (S.D.N.Y., Dec. 26, 1995); accord Zynger v. Dep't of Homeland Security, 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009).  The Complaint cannot be read to allege or seek relief for any action taken by a state official or otherwise taken under color of state law or authority.  Therefore, the reference to section 1343(a)(3) does not support subject matter jurisdiction.

[7] Griffin imposed a requirement of class-based animus for claims under section 1985(3).  This requirement has been found not to apply to claims under the unquoted, first part of section 1985(2).  See Kush v. Rutledge, 460 U.S. 719 (1983).  However, this is due to the absence of language in the first part of section 1985(2) concerning class membership or equal protection.  The second part of section 1985(2), which is at issue here, does contain such language and, therefore, is more analogous to section 1985(3).  See Zemsky v. City of New York, 821 F.2d 148, 150-51 & n.4 (2d Cir. 1987) (suggesting that Kush applies only to the first clause of Section 1985(2) and that, otherwise, "a plaintiff states a viable cause of action under Section 1985 or 1986 only by alleging a deprivation of his rights on account of his membership in a particular class of individuals"); Keating v. Carey, 706 F.2d 377, 385 (2d Cir. 1983) ("'[W]hile the second clause of part (2) makes it unlawful to obstruct the course of justice in state courts 'with the intent to deny to any citizen the equal protection of the laws,' . . . the first clause simply outlaws

As noted above, Count VI alleges a conspiracy to interfere with and deny Marshall's rights under the First Amendment and his "right to reasonable redress." Complaint ¶ 19. Marshall alleges that Mayo, in collusion with Webster, "asserted a defense without probable cause," and that by engaging in "dilatory, bad faith and harassing litigation," the defendants "denied, delayed or postpone[d] Plaintiff being made whole." Id. ¶ 12. The Complaint also suggests that this conduct occurred in a state court action. Id. ¶ 12 n.1. Marshall further alleges that Webster "discriminated against [him] based upon race." Id. ¶ 11. These pleadings expressly allege a number of facts suggesting a civil conspiracy claim pursuant to 42 U.S.C. section 1985(2). The court therefore construes Count VI as a claim under section 1985(2), bringing it within the court's jurisdiction pursuant to 28 U.S.C. section 1343(a)(1) and (2).[8] Therefore, defendants' Motion to Dismiss Count VI under Rule 12(b)(1) is denied.

A claim under the second part of section 1985(2) requires "(1) a conspiracy (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any [state court], (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or

all interference with any person's attempt to attend federal court."); Fox v. County of Yates, 10-cv-6020, 2010 WL 4616665, *4 (W.D.N.Y., Nov. 12, 2010).

[8] It might also be argued that the allegations suggest a claim pursuant to the first clause of 42 U.S.C. § 1985(3), which provides a cause of action against certain private conspiracies to interfere with civil rights. However, the Supreme Court has held that "in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, inter alia, . . . that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) (footnote and quotation omitted). The allegations that Webster and Mayo sought to interfere with Marshall's freedom of speech do not meet this requirement. United Brotherhood of Carpenters and Joiners v. Scott, 463 U.S. 825, 830 (1983) ("[W]e conclude that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state."). The allegations that defendants conspired to interfere with Marshall's right to redress are more appropriately construed as invoking section 1985(2), which expressly covers interference with court proceedings by private actors.

attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." Rodriguez v. City of New York, 05-cv-10682, 2008 WL 4410089, *15 (S.D.N.Y., Sept. 25, 2008); see also 42 U.S.C. § 1985(2).

The sufficiency of the allegations of the Complaint is doubtful. First, the nature of the challenged conduct is described largely in conclusory terms, such as "unethical tactics" and a "harassing, bad faith and dilatory manner." Complaint ¶¶ 12, 19. The Complaint does allege that defendants asserted "a defense without probable cause" and that Mayo sought to "collude and/or court favor with the trier of fact and/or court clerks." Complaint ¶ 12 and n.1. However, these allegations are themselves vague. Without details, they provide limited notice of the specific conduct that Marshall takes to be unlawful. Moreover, the suggestion that there is some connection to a state court proceeding is contained only in a brief footnote, which does not make clear the nature of that proceeding, how much of the alleged conduct occurred in connection with that proceeding, or what specific impact it had on that proceeding. Complaint ¶ 12 n.1.

In addition, the bare allegation that Webster discriminated against Marshall on the basis of race is unsupported by any other particular factual allegations. Complaint ¶ 11. A complaint does not need detailed allegations to support a civil rights claim based on racial animus. See Swierkiewicz v. Sorema, 534 U.S. 506, 514-15 (2002); Phillip v. University of Rochester, 316 F.3d 291, 298-99 (2d Cir. 2003). In Swierkiewicz, the Court held that a claim for employment discrimination was adequately pled where the complaint "detailed the events leading up to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." 534 U.S. at 514. In Phillip, the Second Circuit held that a

complaint adequately pled a claim under the equal benefit provision of 42 U.S.C. section 1981because it "describe[d] in great detail what the defendants actually did" and "allege[d] that the plaintiffs were singled out of a group that apparently also contained non-minority students." 316 F.3d at 298-99. After Twombly and Iqbal, the Second Circuit has relied on these cases where district courts have dismissed for failure to adequately plead discriminatory motive. See, e.g., DiPetto v. U.S.P.S., 383 F. App'x 102, 103-04 (2d Cir. 2010) (concluding that a complaint adequately "described specific discriminatory actions that had been taken against him by his supervisor and alleged that he was treated differently, inter alia, on the basis of his race"); Boykin, 521 F.3d at 214-15 ("[I]t is sufficient that Boykin's complaint states that she 'is an African American female,' describes KeyBank's actions with respect to her loan application and alleges that she 'was treated differently from similarly situated loan applicants . . . .'").

However, the bare allegation of racial discrimination in this case falls short of this lenient standard. The Complaint cannot be said to provide an account of the facts of this claim, as emphasized in Swierkiewicz and Phillip. It does not allege the races of Mayo or any of the relevant Webster employees, as noted in Swierkiewicz, 534 U.S. at 514. It does not allege that Marshall was treated differently than others similarly situated, as alleged in Boykin, 521 F.3d at 214-15, Phillip, 316 F.3d at 298-99, and DiPetto, 383 F. App'x at 103-04. In short, it contains no factual allegations, other than the fact that Marshall is an African American male, that would support an inference that defendants were motivated by racial animus. This case is therefore more analogous to Watts v. Services for the Underserved, 309 F. App'x 533 (2d Cir. 2009). There, the Second Circuit did not dispute that district court's decision that the pleadings were

18

inadequate with respect to discriminatory motive, but reversed because the district court failed to provide the pro se plaintiff an opportunity to replead.  Id. at 535.  Accordingly, Count VI is dismissed for failure to state a claim, with leave to replead, if Marshall has a factual basis to set forth more detailed allegations supporting a claim under the second part of section 1985(2).

### F.    Counts I and III -- State Law Claims

Counts I and III, alleging fraud and libel, respectively, arise under state law. Because the court has jurisdiction over the federal claims, the court has discretion to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. section 1367.  Because some of the federal causes of action survive this motion to dismiss, and because these two state law claims arise out of the same nucleus of facts, the court will exercise supplemental jurisdiction over Counts I and III.

### 1.    Count I:  Fraud

Under Connecticut law, "[f]raud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment . . . ."  Weinstein v. Weinstein, 275 Conn. 671, 685 (2005).

Marshall's fraud claim is based on the allegations that Webster took money from his account without cause and then sought to "cover" this act with false or "manufactured" justifications.  Complaint ¶ 14.  Because there is no suggestion that

19

Marshall relied on these false justifications or surrendered any legal right on that basis, the Complaint fails to state a claim for fraud.

The failings of Marshall's fraud claim may stem from the fact that the technical, legal definition of "fraud" is more specific than the word's common usage. Taking as true the allegation that Webster unlawfully removed $233 from Marshall's account, Marshall might have a claim under a variety of legal theories, including, perhaps, conversion, see Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745 (2006); civil theft, see Conn. Gen. Stat. § 52-564; or breach of contract, depending on the terms of Marshall's account agreement. The court expresses no view of the merits of a claim under any such theory. Marshall is given the opportunity to plead such a claim. Therefore, Count I is dismissed with leave to replead under a more plausible legal theory, if Marshall chooses to do so.

### 2. Count III: Libel

Marshall alleges that Webster committed libel by inaccurately reporting to the ChexSystems reporting service that Marshall was "suspected of fraud activity." Complaint ¶ 16. He alleges that this caused harm to his reputation and credit rating, as well as various other forms of economic and personal injury. Id.

Libel is a cause of action under Connecticut law for a written defamatory statement. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third

person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." <u>Gambardella v. Apple Health Care, Inc.</u>, 291 Conn. 620, 627-28 (2009). There are two types of libel:  libel <u>per se</u>, which involves statements that are defamatory in themselves, and libel <u>per</u> <u>quod</u>, which involves statements that are defamatory in light of extrinsic facts known to the recipient of the communication. <u>Lowe v. City of Shelton</u>, 83 Conn. App. 750, 765-66 (2004). "When a plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover. . . ." <u>Id.</u> (citation omitted).

Defendants argue that Marshall's claim should be dismissed because it fails to state a claim for libel <u>per se</u>. Defendants' Mem. at 12. "To recover on a claim that the libel was actionable per se, a plaintiff must show that the libel, on its face, either charged some impropriety in the plaintiff's business or profession or that it charged a crime of moral turpitude." <u>Mercer v. Cosley</u>, 110 Conn. App. 283, 294 (2008). Marshall does not allege that the report made to ChexSystems charged him with impropriety in the conduct of his business or profession, and the mere reference to "suspicion of fraud activity" does not charge a person with a crime, much less a crime of moral turpitude. <u>See</u> <u>Yakavicke v. Valentukevicius</u>, 84 Conn. 350, 80 A. 94, 95-96 (1911) (holding that words like "cheat" and "swindle" are not libel <u>per se</u> because, <u>inter alia</u>, they "may embrace civil fraud, for which one is amenable to a civil, and not to a criminal, action"). Statements impugning a person's creditworthiness also are not actionable <u>per se</u>. <u>See</u> <u>Urban v. Hartford Gas Co.</u>, 139 Conn. 301, 303, 309 (1952) (statements falsely implying that plaintiffs were "dead beats and delinquent debtors" were not actionable <u>per se</u>). Therefore, Count III fails to state a claim for libel <u>per se</u>.

However, this is not sufficient to support dismissal. Defendants provide no basis for their assumption that Count III should be construed to claim libel per se, and they fail to consider the possibility that it is a claim for libel per quod. The court notes that a plaintiff claiming libel per quod bears the burden of pleading and proving actual damages. Here, Marshall has pled damages only in vague terms, referring to "loss of business," "loss of banking opportunity," etc. Complaint ¶ 16. Count III is therefore dismissed for failure to state a claim. Marshall is given leave to replead this claim setting forth allegations of specific, actual damages caused by Webster's allegedly libelous conduct.

### G. Marshall's Motion to Strike

Relying on Fed. R. Civ. P. 12(f), Marshall filed a Motion to Strike (Doc. No. 35) defendants' Reply Memorandum (Doc. No. 34). Marshall argues that defendants' Reply Memorandum was "redundant, immaterial and needlessly complicate 'expeditious' judicial adjudication." Motion to Strike at 1. Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." As an initial matter, a reply memorandum is not a "pleading." See Pakter v. New York City Dep't of Ed., 08-cv-7673 (DAB), 2010 WL 1141128, *4 (S.D.N.Y., March 22, 2010); Rochester-Genesee Regional Transp. Authority v. Hynes-Cherin, 531 F. Supp. 2d 494, 519 n.17 (W.D.N.Y. 2008); see also Fed. R. Civ. P. 7 (distinguishing "pleadings" from "motions and other papers"). Furthermore, the Motion to Strike is mooted by the court's resolution of defendants' Motion to Dismiss. Marshall has not been prejudiced by the court's consideration of the Reply Memorandum, and that Memorandum has no foreseeable impact on this case going forward.

**V.      CONCLUSION**

Defendants' Motion to Dismiss [Doc. No. 21] is **GRANTED IN PART** and

**DENIED IN PART**.  Counts I, II, III, V, and VI are dismissed pursuant to Rule 12(b)(6).

Marshall is granted leave to file an amended complaint to cure the defects in Counts I,

II, III, and VI, within 30 days of this Ruling.  Count IV is not dismissed, and Marshall may

proceed on that count.  Marshall's Motion to Strike [Doc. No. 35] is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 20th day of January, 2011.


  /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge